IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN O. HANSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-2751-N |
| | § | |
| ODYSSEY HEALTHCARE, INC., *et al.* | § | |
| | § | |
| Defendants. | § | |

# ORDER

This Order addresses Defendant Odyssey Healthcare, Inc. ("Odyssey") and Defendants Burnham, Cannon, Carlyle, Cross, Feldstein, Gasmire, Rash, Schabel, and Steffy's (collectively, the "Individual Defendants") Motion to Dismiss [20]. Because Plaintiff Hanson failed to make pre-suit demand on Odyssey's board and is collaterally estopped from relitigating whether making demand would have been futile, the Court grants the motion to dismiss.

## I. BACKGROUND

Odyssey is one of the nation's largest providers of hospice case for patients with terminal diagnoses. Today, the company oversees hospice care centers in many states from coast to coast. In the late 1990s and early 2000s, Odyssey grew rapidly by both acquiring existing hospice care centers and opening new centers. As a result of this growth, Odyssey reported increased revenues, net income, and earnings per share.

By early 2004, however, Odyssey's rate of expansion slowed. While analysts had previously predicted consensus earnings per share of $1.09 for 2004, Odyssey announced in February of that year that the company's 2004 earnings per share were now projected to be between $1.03 and $1.05. Following this announcement, Odyssey's stock price per share fell $7.11 from $27.43 to $20.32.

Odyssey's announcement also initiated a wave of litigation brought by shareholders alleging that members of Odyssey's board of directors engaged in various breaches of their fiduciary duties, including misconduct involving unlawful patient admission, retention, and billing practices, in an attempt to counteract the company's slowed expansion and fend off new competitive forces in the hospice services industry. In addition to seven securities class actions,[1] plaintiffs filed four derivative suits – two in Texas state court and two in this Court. Judge Murphy consolidated the two derivative suits brought in state court into *In re Odyssey HealthCare, Inc. Consolidated Derivative Litigation*, Lead Cause No. 04-06353-A in the Fourteenth Judicial District Court of Dallas County (the "State Court Derivative Action"). Drawing on the allegations in the previously filed securities class action suits and the State Court Derivative Action, Hanson filed this case on December 30, 2004.[2] Neither Hanson nor any state court plaintiff made pre-suit demand on Odyssey's board.

---

[1]This Court consolidated the seven class actions and later dismissed them with prejudice on May 26, 2006.

[2]Plaintiff Lisa Moats filed the final derivative suit in this Court on September 8, 2005, *Moats v. Burnham, et al.*, No. 3:05-CV-01803-N. Following this Court's dismissal of the securities class action suits brought against Odyssey, Moats voluntarily withdrew her demand on Odyssey's board and dismissed her suit in October 2006.

ORDER – PAGE 2

On October 3, 2006, Judge Murphy dismissed "without prejudice" the state court plaintiffs' Third Amended Shareholder Derivative Petition for failure to plead demand futility with sufficient particularity.[3] Odyssey and the Individual Defendants now move to dismiss this derivative action, arguing that Hanson is collaterally estopped from relitigating whether demand on Odyssey's board would have been futile. The Court agrees. Judge Murphy's ruling is binding on this Court as to the issue of demand futility. Accordingly, the Court grants Odyssey and the Individual Defendant's motion to dismiss.

## II. MOTION TO DISMISS STANDARD

When a party fails to state a claim upon which relief can be granted, dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate. *See* FED. R. CIV. P. 12(b)(6). When ruling on a Rule 12(b)(6) motion, courts must accept a plaintiff's factual allegations as true and view them in the light most favorable to the nonmovant. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). Moreover, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)).

---

[3]Judge Murphy dismissed the petition when the plaintiffs chose not to amend their petition again by October 2, 2006 in response to her September 28 order granting Odyssey's and Individual Defendant's special exceptions. *See* Def.'s Appx. Ex. 3 at 148 ("Final Order of Dismissal Without Prejudice").

### III. THE DEMAND REQUIREMENT IN SHAREHOLDER DERIVATIVE ACTIONS

Shareholder derivative suits permit individual shareholders of a corporation to file suit on the corporation's behalf as "a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (internal quotation marks omitted). To discourage abuse of this remedy, courts required that shareholders who wish to initiate a derivative action must first "demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* (internal quotation marks omitted). This demand requirement is embodied in Rule 23.1 of the Federal Rules of Civil Procedure, which provides that a plaintiff in a federal derivative action must:

> allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

FED. R. CIV. P. 23.1.

Thus, to satisfy the demand requirement, a shareholder plaintiff must allege that he or she made demand on the corporation's board or why such a request would have been futile. *Id.* Because Hanson failed to make demand on Odyssey's board of directors before bringing suit, he can proceed with this derivative action only if he can adequately plead that such demand would have been futile. For the reasons given below, however, Hanson is barred from relitigating the issue of demand futility and therefore cannot show that his failure to make demand should be excused in this case.

### IV. HANSON IS COLLATERALLY ESTOPPED
### FROM RELITIGATING DEMAND FUTILITY

The Court finds that Hanson is precluded from arguing that demand on Odyssey's board would have been futile because all prerequisites for collateral estoppel on the issue of demand futility have been met in this case. The doctrine of collateral estoppel – also known as issue preclusion – bars a litigant from relitigating in a later controversy an issue that was previously decided against that party in a earlier action. *See* BLACK'S LAW DICTIONARY 279 (8th ed. 2004). The doctrine "is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994).

Under the full faith and credit statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Accordingly, this Court is bound by Judge Murphy's ruling on demand futility if that judgment would be afforded preclusive effect in a Texas state court.[4] For collateral estoppel to apply under Texas law, a party must show that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Id.* at 801.

---

[4]Texas applies the doctrine of collateral estoppel in accordance with traditional federal common law. *See Sysco*, 890 S.W.2d at 802 n.7 ("We perceive little difference between the federal courts' formulation of the doctrine [of collateral estoppel] and our own.").

### A. Demand Futility Was Fully and Fairly Litigated in the State Court Derivative Action

There is little question that the issue of demand futility was fully and fairly litigated before Judge Murphy in Texas state court. Indeed, Hanson does not dispute this conclusion in his response. Demand futility was at the forefront of the State Court Derivative Action, and it was given a considerable amount of attention by Judge Murphy and the parties. Odyssey and the Individual Defendants filed special exceptions challenging the plaintiffs' failure to make demand on three separate occasions, and the plaintiffs amended their petition three times before it was finally dismissed. On September 15, 2004 and again on June 28, 2006, Odyssey and the Individual Defendants filed special exceptions. Each time the plaintiffs repled. On August 15, 2006, the defendants challenged plaintiffs' allegations on demand futility a third time. Plaintiffs filed a 32-page response to the defendants' motions, and on September 19, 2006, Judge Murphy conducted an hour-long hearing on the motions. Thus, the record demonstrates that both parties actively litigated the demand futility issue, and, accordingly, the Court finds that the issue was fairly and fully litigated in the State Court Derivative Action.

### B. Judge Murphy's Dismissal Is Procedurally Definite and Thus a Proper Basis for Estoppel

The Court further finds that Judge Murphy's dismissal falls within the meaning of "judgment" in Texas's collateral estoppel rule formulation and that the issue of demand futility was essential to that judgment.

As with the question of full and fair litigation, there is no dispute that Judge Murphy's order dismissing the State Court Derivative Action was squarely based on the issue of demand futility. Pl.'s Appx. Ex. 2 at 145 ("Order Granting Defendants' Special Exceptions") (finding that the plaintiffs failed "to state the necessary factual allegation to show demand futility"). Therefore, the only remaining issue under this prong of the Court's analysis is whether Judge Murphy's dismissal without prejudice is sufficiently final to qualify as a "judgement" for collateral estoppel purposes.

Under Texas law, "the judgment requirement for collateral estoppel does not always require a final, appealable judgment, the test for finality is 'whether the conclusion in question is procedurally definite.'" *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 385 (Tex. 1985) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13, cmt. g (1982)). To determine whether a ruling is procedurally definite, Texas courts consider "whether 'the parties were fully heard, [whether] the court supported its decision with a reasoned opinion [and whether] the decision was subject to appeal or was in fact on appeal.'" *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13, cmt. g (1982)) (alterations in original); *see also Acker v. City of Huntsville*, 787 S.W.2d 79, 82 (Tex. App. – Houston [14th Dist.] 1990, no writ) ("The seminal test for finality sufficient to justify issue preclusion is whether the decision in the prior case is procedurally definite – was it adequately deliberated and firm . . . .").

Here, Judge Murphy's ruling satisfies all three factors. As discussed above, the parties in the State Court Derivative Action extensively litigated the issue of demand futility

and therefore were fully heard on the issue before Judge Murphy. Further, it is clear from her order and the transcript of the hearing preceding the order that Judge Murphy gave sufficient attention and contemplation to the issue of demand futility. Finally, Judge Murphy's decision is appealable and, in fact, was appealed.[5]

Hanson erroneously argues that a dismissal "without prejudice" by definition cannot have a preclusive effect and that therefore Judge Murphy's order cannot qualify as a "judgment" having preclusive effect. While Judge Murphy's dismissal was labeled "without prejudice," this characterization does not automatically make her order void of preclusive effect. It is a generally accepted principle that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, *he is precluded from relitigating the very question which was litigated in the prior action*." RESTATEMENT OF JUDGMENTS § 49, cmt. B (1942) (emphasis added); *see also* 18A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4437 (2d ed. 2002) ("Dismissal for failure to satisfy a procedural precondition . . . . should preclude relitigation of the same precondition issue.").

Therefore, while Judge Murphy's dismissal was "without prejudice as to the substantive cause of action," it was "with prejudice on the issue of the obligation to make

---

[5]The appeal of Judge Murphy's dismissal without prejudice is still pending in Case No. 05-06-01431-CV before the Texas Fifth District Court of Appeals. The fact that the decision is under appeal, however, does not affect the finality of a judgment for collateral estoppel purposes. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) ("[A] judgment is final for the purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982))).

demand on the directors with respect to that substantive complaint" and therefore sufficiently final to bar relitigation of the issue. *In re Sonus Networks, Inc. S'holder Derivative Litig.*, ___ F.3d ___, No. 06-1937, 2007 WL 2325819, at *7 (1st Cir. Aug. 16, 2007) (quoting *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 267 (1st Cir. 1973)); *see also Henik v. LaBranche*, 433 F. Supp. 2d 372, 379 (S.D.N.Y. 2006) (finding that state court dismissal of derivative suit for failure to plead demand futility with sufficient particularity "was dismissed with prejudice to the bringing of a new action, absent showing that a pre-suit demand was rejected or not considered"). Accordingly, the Court finds that Judge Murphy's decision to dismiss the State Court Derivative Action for failure to plead demand futility with sufficient particularity is procedurally definite and sufficiently final to satisfy the judgment requirement for the purposes of collateral estoppel.

### *C. Hanson and the State Court Derivative Plaintiffs Are in Privity Because Both Represent Odyssey, the True Party in Interest in All Relevant Actions*

The Court also finds that the parties before it were in effect also adversaries in the State Court Derivative Action because both Hanson and the state court plaintiffs brought their shareholder derivative actions on behalf of Odyssey, which is the true party in interest here. To satisfy the requirement for collateral estoppel that the present parties were also adversaries in the first action, Texas law demands only "that the party against whom the doctrine is asserted was a party or in privity with a party in the first action." *Sysco*, 890 S.W.2d at 802 (emphasis removed). As a general principle, "parties are in privity for purposes of collateral estoppel when: (1) they control an action even if they are not parties

ORDER – PAGE 9

to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998).

Therefore, because shareholder derivative suits are brought on behalf of the corporation, "it follows that the corporation is bound by the results of the suit in subsequent litigation, even if different shareholders prosecute the suits." *Sonus*, 2007 WL 2325819, at *10 (citing *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) and *Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 267 (3d Cir. 1978)). While Hanson correctly points out that collateral estoppel is generally not a bar to parties who themselves did not have an opportunity to litigate in the prior action, the unique nature of derivative litigation logically leads to a finding of privity between all shareholder plaintiffs. Although there will ordinarily be factors differentiating a plaintiff in any given suit from a plaintiff in a similar suit against the same defendant, a derivative cause of action "does not require any showing of the characteristics specific to the individual shareholder who seeks standing, aside from the obvious demonstration that the plaintiff was a shareholder during the relevant period." *Henik*, 433 F. Supp. 2d at 381. In fact, an individual shareholder bringing a derivative claim is at best a nominal plaintiff. *See Ross v. Barnhard*, 396 U.S. 531, 538 (1970). The corporation is the real party in interest; it receives the proceeds of the action and is bound by the results of the suit. *Id.* Therefore, Odyssey itself is the true plaintiff in this suit, just as it was in the State Court Derivative Action.

Accordingly, because Hanson and the state court plaintiffs both represent the identical interests – Odyssey and all of its shareholders – the Court finds that the parties to this suit were indeed cast as adversaries in the State Court Derivative Action. *See, e.g.*, *Sonus*, 2007 WL 2325819, at *10; *LeBoyer v. Greenspan*, No. CV03-5603-GHK(JTLX), 2006 WL 2987705, at *3 (C.D. Cal. Oct. 16, 2006) ("[T]he [requirement that the parties were adverse in the prior action] is satisfied in that in both suits the plaintiff is the corporation itself. The differing groups of shareholders who can potentially stand in the corporation's stead are in privity for the purposes of issue preclusion."); *Henik*, 433 F. Supp. 2d at 380; *In re Sonus Networks, Inc. S'holder Derivative Litig.*, 422 F. Supp. 2d 281, 291-92 (D. Mass. 2006) (collecting cases).

### D. Hanson's Interests Were Adequately Represented in the State Court Derivative Action

Finally, the Court rejects Hanson's assertion that collateral estoppel should not apply here because his interests were not vigorously and exhaustively prosecuted by the state court derivative plaintiffs. Hanson is correct that collateral estoppel is improper where the interests of nonparty plaintiffs facing preclusion were not adequately represented in the prior litigation. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 42(e); *Ji v. Van Heyningen*, No. CA 05-273 ML, 2006 WL 2521440, at *5 (D.R.I. Aug. 29, 2006) (failing to rule on collateral estoppel grounds but noting that "[i]f nonparty stockholders are to be conclusively bound by the results of an action prosecuted by a stockholder ostensibly representing their interests, . . . fundamental considerations of fairness and justice demand that the representation be adequate"). However, the doctrine will not be set aside for "failure of a representative to

invoke all possible legal theories or to develop all possible resources of proof," but rather only in light of representation "so grossly deficient as to be apparent to the opposing party." RESTATEMENT (SECOND) OF JUDGMENTS § 42 cmt. f (1982).  Here, nothing suggests that the state court plaintiffs did anything short of vigorously litigating the issue of demand futility. As discussed above, they amended their petition on three separate occasions and actively participated in the motions practice leading to the dismissal of the claim.

Hanson further makes much the fact that his complaint purportedly contains substantial factual allegations not present in the dismissed state court petition.  While the Court suspects that Hanson's additions are cumulative to the allegations plead before Judge Murphy, it need not reach this conclusion because collateral estoppel applies not only to those facts actually pled in state court but also to any evidence that "was available and could have been brought before the state court before it dismissed the state action."  *Sonus*, 2007 WL 2325819, at *9.  Hanson has shown no reason why his additional facts could not have been offered in the state court case.  For this reason, the words of the Second Circuit in *Dana v. Morgan*, 232 F. 85, 91 (2d Cir. 1916), apply here with equal force to Hanson's objections:

> He knew of the pendency of the other suit and he had an opportunity to be heard in it.  It was expressly for the benefit of any and all the stockholders who might come in and contribute to its expense.  At any time before decree he might have been made a party if he had chosen to intervene, and having become a party he might have informed the court of anything he deemed important to bring to its attention . . . .  The question whether he should intervene or commence an independent suit was considered by him and he concluded that he would not participate in the [state court] suit.  He had his opportunity and declined to avail himself of it.

ORDER – PAGE 12

Accordingly, the Court finds that Hanson failed to show that the state court plaintiffs neglected to adequately represent his interests and also, to the extent that he held additional information, failed to share it with his fellow shareholders in the state court action.

## V. CONCLUSION

Hanson failed to make demand on Odyssey's board and, as a result of Judge Murphy's dismissal of the State Court Derivative Action, is now barred from relitigating whether demand would have been futile. Indeed, if this were not the case, shareholder derivative litigation would "wholly uproot the policy of issue preclusion," *Sonus*, 422 F. Supp. 2d at 292, because successive "shareholder plaintiffs could indefinitely relitigate the demand futility question in an unlimited number of state and federal courts, a result the preclusion doctrine specifically is aimed at avoiding," *Henik*, 433 F. Supp. 2d at 380; *see also LeBoyer*, 2006 WL 2987705, at *3 ("Were the demand futility issue not final on the merits it could be infinitely litigated in subsequent suits by successive individual plaintiffs suing in a derivative capacity. Such a result would run against the clear purpose of preclusion doctrines.").

As a result, Hanson has failed to prove that he satisfied all preconditions necessary to bring a shareholder derivative suit. Accordingly, the Court grants Odyssey and the Individual Defendants' motion to dismiss without prejudice.

Signed September 21, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14